UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

JULIENE MCCOVEY,

          Plaintiff,

    v.

CAROLYN W COLVIN,

          Defendants.

Case No.  15-cv-02663-NJV

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, , 21

Plaintiff Juliene McCovey seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was denied by the Appeals Council. The ALJ's decision is the "final decision" of the Commissioner of Social Security, which this court may review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Both parties have consented to the jurisdiction of a magistrate judge.  (Docs. 6 & 7).  For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and remand this action for further proceedings.

## LEGAL STANDARDS

**T**he Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108

United States District Court
Northern District of California

United States District Court
Northern District of California

1   F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are

2   supported by substantial evidence," a district court must review the administrative record as a

3   whole, considering "both the evidence that supports and the evidence that detracts from the

4   Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The

5   Commissioner's conclusion is upheld where evidence is susceptible to more than one rational

6   interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

7                    **SUMMARY OF RELEVANT MEDICAL EVIDENCE**[1]

8          Plaintiff's medically determinable impairments are back pain, right hip pain, right knee

9   pain, right foot pain, right arm problems, hepatitis, and headaches.  (AR 249, 271-72, 526).

10  Plaintiff was injured in motor vehicle accidents in 1981 and 1999.  (AR 62).  Her back pain

11  worsened in 2009.  (AR 407).  On June 1, 2010, her primary treating physician, Carl W. Bourne,

12  M.D., stated that Plaintiff was unable to work, noting that she had managed to work despite her

13  chronic pain until August of 2009 when her symptoms had worsened, and that her pain had

14  recently increased.  (AR 407).

15         Plaintiff was seen for joint pain in multiple sites throughout her body.  Treating provider

16  Emmett Chase, listed the following complaints on February 6, 2013, noting that they might be

17  related to her hepatitis rather than to arthritis:  left shoulder pain, right hand numbness, right knee

18  and ankle pain, and lumbar pain.  On examination, he found swollen and distorted fingers on the

19  right hand. (AR 526).

20         Since her injuries in the 1999 rollover motor vehicle accident, Plaintiff continued to

21  complain of pain in her low back and right leg.  (AR 339).  A lumbar spine x-ray dated August 11,

22  2009, showed degenerative disk disease at multiple levels, with mild to moderate joint space

23  narrowing at L5-S1, mild degenerative changes at L4-5 and L5-S1, and slight changes at L3-4.

24  (AR 349).

25         Daniel Farnum, M.D., performed a consultative orthopedic evaluation on September 18,

26

27  ───────────────
    [1]  These facts are largely taken, and slightly modified, from Plaintiff's Motion.  *See* Pl. Mot. (Doc.
28  16) at 2-5.  Defendant did not object to Plaintiff's statement of the facts, which this court takes to
    mean that they are undisputed under Federal Rule of Civil Procedure 56(e).

2010, and diagnosed degenerative lumbar disk disease and probable chondromalacia patella on the right.  He found Plaintiff able to stand, walk, or sit up to six hours.  However, Dr. Farnum felt Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently.  (AR 363).  Dr. Farnum did not have access to the 2009 MRI showing moderate foraminal narrowing at L5-S1. (AR 347).

Treatment for Plaintiff's chronic back pain included medication and epidural steroids.  (AR 332-344).  By June 1, 2010, Plaintiff's primary treating physician noted straight leg raising was positive on the right, with decreased back flexion.  (AR 407).  Plaintiff was examined by neurologist Tiffany B. Ward, M.D., on April 2, 2012, for chronic migraines and left arm numbness.  Dr. Ward also found bilateral radicular lower extremity pain.  Straight leg raise was positive on both sides, worse on the right.  (AR 482-484).

Right knee pain with swelling and popping was noted on August 11, 2010.  Plaintiff rated her pain when sitting at 6-7, and at 9 when walking.  (AR 370).  She was treated at Mad River Hospital on August 6, 2011, for a right knee injury.  (AR 422-426).  On December 28, 2011, she complained of ongoing knee pain, with instability, popping, and swelling.  (AR 468).  The plaintiff reported bilateral shoulder pain to Dr. Khalsa on December 1, 2011.  He noted Plaintiff's history of an old left AC separation, but examination of her shoulders was normal.  (AR 475-477).

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.  The ALJ must consider all evidence in the claimant's case record to determine disability (*id.* § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*id.* § 416.920).  "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation.  (AR 18-32).

United States District Court
Northern District of California

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b).  If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled.  *Id*.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (AR 24).

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff suffered the following severe impairments:  degenerative disc disease of the lumbar spine, history of obesity, ankylosis of the right ring finger, and an affective mood disorder.  (AR 24).

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears the burden of showing her impairments meet or equal an impairment in the listing.  *Id*.  If the claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(a)(4)(iv),(e).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  (AR 24).  Next, the ALJ found that Plaintiff had the residual functional capacity to perform light work with several limitations.  AR 27.

At Step Four, the ALJ found that Plaintiff could perform her past relevant work as a "wild-lifer" or caller (bagging and banding spotted owls).  (AR 30).

At Step Five, after consulting with a vocational expert, the ALJ found that there were a significant number of jobs that Plaintiff could perform in the national economy.  (AR. 31). Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period.  *Id*.

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUES PRESENTED**

Plaintiff raises three challenges to the ALJ's decision, arguing that: (1) "The decision is not supported by substantial evidence due to the ALJ committing harmful legal error by omitting critical MRI evidence;" (2) "The ALJ committed harmful legal error by failing to give appropriate weight to the treating physician's opinion;" (3)"The decision is not supported by substantial evidence because the ALJ failed to adequately evaluate objective evidence of a disabling condition;" (4) "The ALJ committed harmful legal error by finding the claimant could perform prior relevant work that existed in very few numbers for short periods and may no longer exist;" and (5) "The ALJ failed to properly evaluate all limitations in her RFC finding." Pl.'s Mot. (Doc. 16) at 2.

**DISCUSSION**

**A.    The 2009 MRI**

Plaintiff's first two claims are interrelated, in that Plaintiff claims that the ALJ erred by failing to properly consider a 2009 MRI and that the ALJ erred by failing to give the appropriate weight to Plaintiff's treating physician because the ALJ ignored the physician's reliance on the 2009 MRI in rendering his opinion. Thus, the court will address these claims (One and Two) in combination.

At the core of these arguments is the MRI of August 29, 2009 (AR 347-48). Plaintiff asserts that the ALJ failed to properly evaluate the MRI. Plaintiff argues as follows:

> The decision quoted the MRI report as finding only "spondylosis of the lumbar spine, primarily at L3-4, L4-5, and L5-S1 (Exhibit 1F at 51-52 [AR 347-48])." But the decision only quoted one of five findings. The full text of the impression in the report shows
>
>     Impression:
>     1. SPONDYLOSIS OF THE LUMBAR SPINE PRIMARILY AT L3-4, L4-5 AND L5-S1, WORSE AT L5-S1.
>     2. POSTERIOR FACET ARTHROPATHY AT L3-4, L4-5 AND L5-S1.
>     3. NO EVIDENCE OF CENTRAL CANAL STENOSIS.
>     4. MILD LEFT NEURAL FORAMINAL NARROWING AT L4-5 SECONDARY TO ANNULAR DISC BULGE AND FACET ARTHROPATHY.
>     5. MODERATE BILATERAL NEURAL FORAMINAL NARROWING AT L5-S1 SECONDARY TO BROAD BASE ASYMMETRIC DISC BULGE, MORE PROMINENT ONTHE

5

United States District Court
Northern District of California

LEFT AND POSTERIOR FACET ARTHROPATHY.
(AR 347-48)

While the decision only recognized the first impression of spondylosis (which is itself a painful condition by definition), the MRI actually showed three levels of spondylosis, moderate foraminal narrowing at L5-S1 due to a bulging disc, mild foraminal narrowing at L4-5 due to a bulging disc, and arthropathy at three levels. This demonstrates a far more serious condition than the decision gave credit.

Pl.'s Mot. (Doc. 16) at 6.  Plaintiff asserts that by omitting the entirety of the results of the MRI, the ALJ failed to properly set forth clear and specific reasons for rejecting Plaintiff's testimony about the severity of her condition.  Defendant does not meet this argument head-on, preferring instead to argue that the ALJ's determination overall was supported by substantial evidence.

The snag for the Commissioner comes when weaving the fabric of substantial evidence. The Commissioner points directly to the opinion of Dr. Bourne, Plaintiff's treating physician, citing to his "impression of chronic low back pain with sciatica with poor pain control (AR 28, 408)," his notion that "Plaintiff had a history of drug abuse and was sober in the last three years (AR 28, 403, 408)," and his June 2010, examination where he found that Plaintiff "had normal motor strength, positive straight leg raising test on the right, and decreased back flexion (AR 407)." Def.'s Mot. (Doc. 21) at 8.  The Commissioner then turns to the ALJ's rejection of Dr. Bourne's opinion that Plaintiff could not work due to her chronic back pain with sciatica, arguing that the "[t]he ALJ permissibly gave this opinion little weight because it was not consistent with or supported by the overall record, including objective clinical findings in the record and other doctors' findings and opinions." *Id.* at 9.  The Commission makes the same error Plaintiff claims the ALJ made with respect to the MRI.  That is, the Commissioner only gives half the story.

The ALJ stated that little weight was given to Dr. Bourne's opinion because it "was not consistent with or supported by the record.  Instead, his opinion is entirely based on the claimant's self-reported limitations or subjective pain." (AR 28).  That the ALJ appeared to believe that Dr. Bourne's opinion was devoid of a medical record basis is evident from the ALJ's reference to Dr. Bourne's notation in September 2010 that he was awaiting Plaintiff's medical records from Alaska.  This brings us full circle to the August 2009 MRI, because in rendering his opinion that Plaintiff was unable to work, Dr. Bourne specifically pointed to the results of the MRI.  (AR 407). Thus, the ALJ's statement the Dr. Bourne's opinion was based entirely on Plaintiff's self-reported

1    limitations is not correct.  So too, then, is the ALJ's basis for his rejection of Dr. Bourne's opinion.

2    Indeed, Dr. Bourne's records from the same day indicate that he performed a physical

3    examination.

4           It is clear that Dr. Bourne rendered his opinion based, at least in part, on objective clinical

5    findings and a review of the medical records, including the MRI.  Thus the court finds that the

6    ALJ's rejection of Dr. Bourne's opinion lacked "specific, legitimate reasons," supported by

7    "substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).  On remand, the ALJ

8    shall reevaluate Dr. Bourne's opinion in light of its reliance on the MRI and his own observations

9    and, if necessary, discuss how the entirety of the MRI fits into a newly formed RFC.

10   **B.     Substantial Evidence of Record**

11          Here Plaintiff argues that the ALJ's decision is flawed because on the one hand the ALJ

12   finds that "[o]bjective diagnostic studies do not support a finding of disability," (AR 28), but on

13   the other hand the decision goes on to list objective diagnostic studies that would support a finding

14   of disability.  Pl.'s Mot. (Doc. 8) of 10.  Plaintiff complains that the decision provides "no

15   explanation why significant spondylosis, disc space narrowing, and bilateral foraminal narrowing

16   that could produce radiculopathies in three places do not support Plaintiff's allegations of

17   disabling pain."  *Id*.

18          The court finds that this issue is now moot because the ALJ will be required to reevaluate

19   her findings in determining the RFC following a reevaluation of Dr. Bourne's opinion.

20   **C.     The Tagging and Bagging of Spotted Owls**

21          Plaintiff argues that the ALJ erred in making the determination that Plaintiff could return

22   to her work as a "wild-lifer," bagging and banding spotted owls.  Because the ALJ will have to

23   reevaluate Dr. Bourne's opinion in formulating Plaintiff's RFC, the ALJ will be required to redo

24   Step Four, which renders this claim moot.

25   **D.     Migraines**

26          Plaintiff's argument in its entirety in this claim is as follows:

27          Although the decision notes treatment by a neurologist for "intractable and frequent
     migraine headaches" (AR 29,8F/7), the decision not only fails to include them in
28   her RFC at page eight, but finds them nonsevere at page four.  The ALJ is required

United States District Court
Northern District of California

7

1    to consider all limitations in the RFC.  *Andrews v. Shalala,* 53 F.3d 1035, 1044 (9th
     Cir. 1995).

2    Pl.'s Mot. (Doc. 16) at 10.

3        It is not clear whether Plaintiff is attacking the ALJ's Step Two determination with regard

4    to the migraine headaches, or the RFC determination, or both.  In any case, Plaintiff fails to

5    sufficiently set forth the ALJ's alleged error.  At Step Two an ALJ will evaluate medically

6    determinable impairments and find them "severe" if they more than minimally affect the

7    claimant's ability to perform basic work functions.  *See* SSR 96-3p.  Here the ALJ considered the

8    headaches and found that they did not "more than minimally affect" Plaintiff's ability to perform

9    basic work.  (AR 24).  Plaintiff does not provide a basis to overturn that decision.

10       Although the ALJ found the headaches to be non-severe, "[i]n assessing RFC, the

11   adjudicator must consider only limitations and restrictions imposed by all of an individual's

12   impairments, even those that are not 'severe.'"  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

13   2005) (quoting Social Security Ruling 96–8p (1996)).  Here, the ALJ stated that "[a]ll

14   impairments regardless of severity, as well as symptoms, have been considered in the claimant's

15   residual functional capacity" (AR 24), and acknowledged Dr. Ward's report about Plaintiff's

16   headaches (AR 29).  The ALJ's statement that she considered all impairments regardless of

17   severity was made immediately after listing the headaches as non-severe.  The acknowledgment of

18   Dr. Ward's report occurs where the ALJ is formulating the RFC.  Thus, it is clear the ALJ did

19   consider the headaches when making the RFC determination.  Accordingly, the court finds no

20   error.

21                                          CONCLUSION

22       In her prayer for relief, Plaintiff requests that this court remand this action for further

23   proceedings.  For the above stated reasons, the court GRANTS Plaintiff's Motion for Summary

24   Judgment in part and DENIES it in part and DENIES Defendant's Motion for Summary Judgment

25   and REMANDS this case back to the ALJ for further proceedings consistent with this opinion.

26   //

27   //

28   //

United States District Court
Northern District of California

1

**IT IS SO ORDERED**.

2   Dated: March 24, 2017

3

_____

4   NANDOR J. VADAS
United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California